WALLACE, JUDGE:
The claimant, Novo Corporation, in conjunction with the Danbourne Corporation, entered into a contract with the respondent in July of 1973 for the construction of Cheat Lake Bridge near Morgantown, West Virginia. The project, AC-APD 481 (31), was a joint venture of the two corporations. In addition to the construction of the bridge, the contract provided for the construction of land pier #6 and abutment #2 on the east end of the bridge, and land pier #1 and abutment #1 on the west end. Novo Corporation was responsible for the fabrication and delivery of all structural steel. The Danbourne Corporation was responsible for the erection of the steel and all the field work involved in completing the bridge.
Piers 2, 3, 4, and 5 in Cheat Lake were to be constructed by Allied Structural Steel Company.
The Mashuda Corporation had the contract with the respondent to do the site preparation work in the areas of the land piers and abutments.
Both contracts were awarded at about the same time as was the contract to Novo, that is, in July 1973.
The above corporations will be referred to herein as “Novo,” “Danbourne,” “Allied,” and “Mashuda.”
Respondent issued its notice to proceed to Novo on August 2, 1973. Land piers 1 and 6 and abutments 1 and 2 were to be completed late in 1974; however, the Mashuda Corporation *141 did not have the site preparation work complete until June 25, 1975. Allied was to have piers 2, 3, 4, and 5 available for bridge construction on November 30, 1974, but they were not completed and accepted by the respondent until April 23, 1975.
After the site preparation was completed by Mashuda and the lake piers were completed by Allied, Novo and Danbourne were able to proceed under the terms of Novo’s contract with the respondent. The erection of the structural steel then proceeded very close to the original estimated required time after the piers were available, but the workers were forced to work in the winter of 1975-76.
These delays were brought to the attention of the respondent by letter from the claimant dated January 27, 1975. In that letter, claimant requested a time extension of 287 calendar days and a change order covering cost escalation caused by the delays. A meeting was held in respondent’s Charleston office on March 10, 1975, with representatives of the respondent, Allied, Mashuda, and claimant, Novo, concerning the availability of the piers in the lake and the site preparations. Later, the claimant, by its letter of January 13, 1977, submitted a claim for additional compensation in the amount of 409,033.00. A meeting was held at respondent’s office a year later on January 8, 1978, concerning the validity of the claim. The respondent’s March 28, 1978, letter to the claimant refused the claim but granted an extension of 155 calendar days, revised the completion date to October 4, 1976, and waived liquidated damages. The respondent had originally assessed 188 days of liquidated damages.
Subsequent to the completion of the project, the claimant filed its claim against the respondent in the amount of $424,234.39. At the hearing, the claim was amended by reducing the amount to $373,982.00. The claim consisted of increased costs allegedly incurred by reason of the delays. These included additional labor costs, material and subcontract costs, finance costs, field overhead, and home office costs.
The record establishes that the availability of the piers being constructed by Allied was delayed 4.75 months before the erection of the structural steel could commence. This resulted in *142 additional delays in the work to be performed subsequent to the completion of the structural steel work. After the erection of the structural steel, the bolting-up process commences. Then comes the placing of the deck known as “stay in place” deck, or “SIP.” This is eventually followed by the placing of the reinforcing steel and pouring of the deck, parapet, and walls. The bolting-up process was delayed .75 month and the installation of the SIP deck was delayed 1.75 months. The bolting-up and the SIP work are labor-intensive items, that is, they are performed by labor. The delays caused the work to be performed in the winter months, which had a tremendous impact on productivity. The total delayed time was 7.25 months.
The delays in the completion of the work to be performed by Allied and Mashuda delayed the commencement by the claimant of the work under its contract with the respondent. However, the claimant was able to complete its work in the same amount of time required under its time schedule as approved by the respondent. The extension of the completion time and the waiver of liquidated damages by the respondent are evidence that the respondent recognized that the delays were not the fault of the claimant. The contract was bid with the expectation that it would be completed within the estimated time frame. When the project did not commence as scheduled, the claimant incurred additional expenses for labor and materials. The increases in labor costs between the original estimated completion date and the actual date were $14,735.00 for iron workers, $4,775.00 for carpenters, $4,670.00 for laborers, $1,906.00 for cement finishers, and $546.00 for operating engineers. The increase in material costs during this period were concrete, $60,797.00, resteel, $8,117.00, and paint, $112,500.00 including $37,000.00 paid to the original paint subcontractor for work performed.
The claimant also contends that it incurred additional costs of $67,500.00 for field operating expenses and $82,963.00 for home office expenses. It further claims 1% per month on monies retained by the respondent, in the amount of $15,473.00.
The Court is of the opinion that the claimant is entitled to *143 recover the established fixed labor increases for the iron workers, carpenters, laborers, cement finishers and operating engineers in the total amount of $26,632.00, and the fixed increases in material costs for concrete, and paint, less the $37,000.00 previously paid in the amount of $136,297.00.
The cost of the reinforced steel is denied as included in the contract price of the caissons. The percentages estimated for field overhead and home office costs are considered speculative and are denied. The one per cent retainage is, in effect, an attempt to collect interest which the Court, by statute, cannot award.
Accordingly, the Court makes an award to the claimant of $162,929.00.
Award of $162,929.00.